UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. ____________________

MICHELE MASON,

Plaintiff,

v.

CARNIVAL CORPORATION LTD.
d/b/a CARNIVAL CRUISE LINE,

Defendant.
________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, MICHELE MASON ("Plaintiff"), hereby sues Defendant, CARNIVAL CORPORATION LTD., d/b/a CARNIVAL CRUISE LINE, and alleges as follows:

**PRELIMINARY ALLEGATIONS**

1. Plaintiff, MICHELE MASON, is a resident and citizen of Ohio, and is otherwise *sui juris*.

2. Defendant, CARNIVAL CORPORATION LTD., d/b/a CARNIVAL CRUISE LINES (hereinafter "CARNIVAL" or "Defendant"), is a foreign entity incorporated under the laws of Bermuda with its principal place of business in Miami, Florida.

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the Parties are completely diverse and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. In the alternative, if diversity jurisdiction does not apply, then this matter falls under the Court's admiralty jurisdiction, 28 U.S.C. § 1333.

4. At all times material hereto, Defendant, personally or through an agent:

a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this State and/or county;

b. Was engaged in substantial activity within this State;

c. Operated vessels in the waters of this State;

d. Committed one or more of the acts stated in Florida Statutes §§ 48.081, 48.181 or 48.193;

e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state;

f. Defendant was engaged in the business of providing to the public and to Plaintiff in particular, for compensation, vacation cruises onboard its cruise ships.

5. Defendant is subject to the jurisdiction of the courts of this state.

6. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

7. Venue is proper in this district pursuant to the forum-selection clause in the Passenger Contract Ticket issued by Defendant, which requires all passenger lawsuits against CARNIVAL to be filed in the United States District Court for the Southern District of Florida in Miami, Florida.

**FACTS COMMON TO ALL COUNTS**

8. At all times material hereto, CARNIVAL owned, operated, managed, maintained, controlled and/or had exclusive custody of the Vessel, the *Carnival Magic* ("the Vessel").

9. At all times material hereto, Defendant operated the Vessel on navigable waters.

10. At all times material hereto, Plaintiff was a paying passenger lawfully aboard the Vessel.

11. On, or about, November 4, 2025, at approximately 10:00 a.m., Plaintiff sustained severe bodily injuries after she slipped and fell on a wet, slippery, and/or hazardous liquid while walking on the open, mid-ship exterior portion of Deck 10 (the Lido Deck) onboard the Vessel. Specifically, the incident occurred while walking toward the Lido Marketplace, near the Blue Iguana, shortly after Plaintiff walked onto the exterior portion of the deck, on the teak/synthetic-teak deck surface.

12. The open, exterior portion of Deck 10 is a common area of the Vessel that was open to passengers at the time of the incident and where Defendant reasonably expects passengers to visit.

13. At the time of the incident, the entire deck exterior surface appeared to be coated with a glassy sheen of moisture. Upon information and belief, the deck was wet and/or slippery from dew and/or the overnight cleaning process, which creates large accumulations of water, often mixed with other liquids and/or transitory substances, for extended periods of time.

14. The subject area constituted a dangerous condition for reasons that include, but were not limited to:

a. A transitory substance on the subject deck surface, specifically water, and/or water mixed with a foreign transitory substance such as soap, or a combination thereof, was foreseeably present on the teak/synthetic-teak deck during the morning hours following the overnight cleaning process;

b. A deck surface which becomes unreasonably slippery when wet, particularly when subjected to the foreseeable presence of water, soap, and/or a combination of those transitory substances;

c. The combination of an unreasonably slippery teak/synthetic-teak walking surface and the presence of one or more transitory substances as described in subparagraphs (a) and (b); and/or

d. The lack of warning signs, cones, barriers, or other reasonable measures to warn passengers of areas they may encounter wet and unreasonably slippery conditions.

15. These dangerous conditions were not open or obvious to Plaintiff, who did not and could not reasonably anticipate the extent of the extreme degree of slipperiness of the subject surface through ordinary observation.

**DEFENDANT'S NOTICE**

16. At all times material hereto, Defendant knew or should have known that it was reasonably foreseeable for passengers to be injured by slipping and falling on the wet, slippery and/or hazardous surface on the exterior deck surface on Deck 10 of the Vessel, as it occurred on the date of Plaintiff's incident.

17. Defendant's own records reflect its actual and/or constructive notice of the dangerous condition. CARNIVAL maintains databases logging prior passenger complaints of slipping hazards and prior slip-and-fall incidents, discusses and documents similar shipboard hazards in meetings memorialized in meeting minutes, and it inspects its vessels for tripping hazards through crewmembers, retained experts, and contractors who generate reports.

18. Upon information and belief, prior to Plaintiff's incident, other passengers aboard CARNIVAL vessels were similarly injured slipping and falling on the same or substantially similar wet and/or unreasonably slippery exterior deck surface on CARNIVAL cruise ships owned and operated by CARNIVAL. Upon information and belief, CARNIVAL vessels have substantially similar pool deck designs, layouts, and flooring materials. Further, upon information and belief,

all pool decks in the same class as the Vessel and on all CARNIVAL vessels have the same or substantially similar teak/synthetic-teak walking surface material. Accordingly, the below prior incidents placed CARNIVAL on actual and/or constructive notice of the dangerous condition that caused Plaintiff's injuries. The public filings include, but are not limited to:

a. On August 4, 2025, cruise passenger J.A. sustained injuries when she slipped and fell on the exterior deck surface on the Lido Deck of the Carnival *Dream*, due to an unreasonably wet, slippery, and/or hazardous surface. *See Allen v. Carnival Corp.,* Case No. 1:26-cv-23833. The *Dream* is a sister ship of the *Magic*, which is also owned and operated by Defendant, and shares common features based on the same or substantially similar deck (including, upon information and belief, the same type of exterior deck surface). This incident is substantially similar to Plaintiff's incident because both incidents involve slip and falls on ships in the same class, sharing a substantially similar configuration and featuring flooring constructed of the same type of teak/synthetic-teak deck surface.

b. On May 16, 2025, cruise passenger A.T. sustained injuries when she slipped and fell on the exterior teak and/or synthetic teak deck surface in the mid-ship section of Deck 10 (the Lido Deck) of the Carnival *Breeze*, due to an unreasonably wet, slippery and/or hazardous surface near the pool. *See Tellez v. Carnival Corp*., Case No. 1:26-cv-24787. The *Breeze* is a sister ship of the *Magic*, which is also owned and operated by Defendant, and shares common features based on the same or substantially similar deck (including, upon information and belief, the same type of exterior deck surface). This incident is substantially similar to Plaintiff's incident because both incidents involve slip and falls on ships in the same class, sharing a

substantially similar configuration and featuring flooring constructed of the same type of teak/synthetic-teak deck surface.

c. On May 14, 2025, cruise passenger J.R. sustained injuries when she slipped and fell on the exterior teak and/or synthetic teak deck surface on Deck 10 (the Lido Deck) of the Carnival *Dream*, due to an unreasonably wet, slippery and/or hazardous surface near the pool. *See Reddig v. Carnival Corp.*, Case No. 1:26-cv-24726. The *Dream* is a sister ship of the *Magic*, which is also owned and operated by Defendant, and shares common features based on the same or substantially similar deck (including, upon information and belief, the same type of exterior deck surface). This incident is substantially similar to Plaintiff's incident because both incidents involve slip and falls on ships in the same class, sharing a substantially similar configuration and featuring flooring constructed of the same type of teak/synthetic-teak deck surface.

d. On April 22, 2024, cruise passenger J.C. sustained injuries when she slipped and fell on an unmarked wet floor surface on the exterior portion of the Lido Deck while a passenger onboard the Carnival *Dream*. *See Cook v. Carnival Corp.*, Case No. 1:25-cv-22271. The *Dream* is a sister ship of the *Magic*, which is also owned and operated by Defendant, and shares common features based on the same or substantially similar deck (including, upon information and belief, the same type of exterior deck surface). This incident is substantially similar to Plaintiff's incident because both incidents involve slip and falls on ships in the same class, sharing a substantially similar configuration and featuring flooring constructed of the same type of teak/synthetic-teak deck surface.

e. On September 17, 2023, cruise passenger S.J. sustained injuries when she slipped and fell on the deck surface of the exterior portion on the Lido Deck while a passenger onboard the Carnival *Breeze*. *See Jennings v. Carnival Corp*., Case No. 1:23-cv-24377. The *Breeze* is a sister ship of the *Magic*, which is also owned and operated by Defendant, and shares common features based on the same or substantially similar deck (including, upon information and belief, the same type of exterior deck surface). This incident is substantially similar to Plaintiff's incident because both incidents involve slip and falls on ships in the same class, sharing a substantially similar configuration and featuring flooring constructed of the same type of teak/synthetic-teak deck surface.

19. CARNIVAL documents notice of the dangerousness of its teak/synthetic-teak deck walking surfaces, including pool-deck areas on walkways at and around its pools, in multiple ways, including prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior slip-and-fall incidents; prior complaints made to guest services throughout its fleet; and safety testing and/or inspections. Pursuant to Rule 11(b)(3), upon information and belief, all such records will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, as they are within Defendant's exclusive control.

20. Additional evidence that CARNIVAL had notice of the dangerous condition is shown by the fact that the condition is an on-going, repetitive problem. CARNIVAL's teak/synthetic-teak pool-deck walking surfaces, including on the exterior deck surface of the Lido Deck, lack a sufficient coefficient of friction and are routinely exposed to water and other transitory substances that render them unreasonably slippery. Passengers can, and repeatedly do, slip, fall, and become injured on these walking surfaces.

21. CARNIVAL also designed, selected, installed, and/or approved the flooring surface in the subject area and knew or should have known that it was unreasonably slippery when wet, presenting a foreseeable hazard to passengers. CARNIVAL chose to use the same teak/synthetic teak flooring material after it had other passengers previously slip and fall on the material as a result of its unreasonably slipperiness.

22. CARNIVAL, at all relevant times, was under a legal duty to comply with mandatory international vessel safety regulations promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified Safety of Life at Sea (SOLAS) treaty, including Part C, Regulation 13, subpart 1.1 ("safe escape routes shall be provided") and subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles"). CARNIVAL's decks and floors, including the subject area where Plaintiff slipped and fell on the exterior portion of Deck 10 on the Carnival *Magic*, are escape routes that CARNIVAL must maintain in a reasonably safe, clear, clean, and dry condition. Upon information and belief, CARNIVAL was also aware of industry safety standards of ASTM International, ANSI, the ISM Code and Regulations, and other industry standards applicable to providing and maintaining safe walkways and floor materials, including slip-resistant surfaces and anti-slip mats in wet pool-deck areas. *See, e.g.,* IMO, MSC Circular 735 (24 June 1996); 46 C.F.R. §§ 72.05-20(n), 116.438(h); ASTM F-1166-07.

**<u>COUNT I – NEGLIGENT MAINTENANCE</u>**

Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through twenty-two (22) as though alleged originally herein.

23. At all material times, it was the duty of Defendant to provide Plaintiff with reasonable care under the circumstances.

24. On or about November 4, 2025, Defendant breached its duty to provide Plaintiff with reasonable care under the circumstances, through the following acts and/or omissions:

a. Allowing the deck surface to remain wet for a significant period of time without drying, mopping, squeegeeing, covering, or otherwise addressing the accumulation of the transitory substance;

b. Failing to adequately and regularly inspect the exterior mid-ship floor surface of Deck 10 of the Vessel for transitory substance accumulation;

c. Failing to adequately and regularly inspect the exterior mid-ship floor surface of Deck 10 of the Vessel to determine whether it was unreasonably slippery due to the accumulation of a transitory substance on the floor;

d. Failing to use flooring material on the exterior mid-ship surface of Deck 10 of the Vessel that was not unreasonably slippery when wet;

e. Failing to adequately and regularly monitor the exterior mid-ship surface of Deck 10 of the Vessel to maintain it free of known, foreseeable dangerous conditions, including the accumulation of a transitory substance on the deck;

f. Failing to ensure the exterior mid-ship surface of Deck 10 of the Vessel was maintained in a reasonably safe condition considering the anticipated and foreseeable accumulation of transitory substances;

g. Failing to restrict passenger access to the exterior mid-ship surface of Deck 10 of the Vessel until the deck surface was dry and safe for use;

h. Applying excessive or improper soap or cleaning solution to the exterior mid-ship surface of Deck 10 of the Vessel;

i. Failing to apply or maintain anti-slip treatments, mats, or other measures on the exterior mid-ship flooring on Deck 10 of the Vessel;

j. Failing to comply with applicable industry standards; and/or

k. Additional conditions, acts, and/or omissions that may be revealed throughout the course of this litigation.

25. The above acts and/or omissions caused and/or contributed to Plaintiff being severely injured because Plaintiff would not have been injured but for the above acts and/or omissions.

26. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through the facts alleged in Paragraphs 16–22. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

27. As a direct and proximate result of the negligence of CARNIVAL, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment against CARNIVAL for damages recoverable under the general maritime law and applicable law, including economic damages (past and future); non-economic damages (past and future); court costs; interest under applicable law, including interest from the date of the subject incident under General Maritime Law; trial by jury on all issues so triable; and such other relief as the Court deems just.

## COUNT II – NEGLIGENT FAILURE TO WARN

Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through twenty-two (22) as though alleged originally herein.

28. At all times material hereto, it was the duty of CARNIVAL to provide Plaintiff with reasonable care under the circumstances, including a duty to warn of dangers known or reasonably known to CARNIVAL in places passengers are invited to or may reasonably be expected to visit.

29. On November 4, 2025, Plaintiff was walking on the exterior portion of Deck 10 (the Lido Deck) of the Vessel at the time of the subject incident; this is a designated passenger area where Plaintiff was reasonably expected to visit.

30. On or about November 4, 2025, Defendant breached its duty to warn Plaintiff through the following acts and/or omissions:

a. Failure to adequately warn passengers, including Plaintiff, of the wet, unreasonably slippery, and/or dangerous condition of the subject floor surface, through written or orally delivered warnings, appropriate signage, markings, or placement of cones;

b. Failing to cordon off the area or place physical barriers to prevent access to the wet and/or unreasonably floor;

c. Failure to adequately warn passengers, including Plaintiff, of the risks and/or dangers associated with the wet and slippery condition of the exterior floor surface during the morning hours when exposed to dew and/or following the overnight deck cleaning process;

d. Failure to adequately warn passengers and Plaintiff of other slip-and-fall incidents previously occurring in the same and/or similar deck areas on the Vessel, her sister ships, and/or other ships in Defendant's fleet; and/or

e. Failure to make audible announcements warning passengers of the wet floor conditions during the cleaning process.

31. The above acts and/or omissions caused and/or contributed to Plaintiff being severely injured because Plaintiff would not have been injured had Defendant adequately warned and/or communicated the foregoing to Plaintiff.

32. At all material times, Defendant knew of the foregoing conditions causing Plaintiff's incident and did not correct them. Defendant's knowledge of the foregoing condition(s) was specifically acquired through the facts alleged in Paragraphs 16–22. Alternatively, the foregoing conditions existed for a sufficient length of time so that Defendant, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.

33. As a direct and proximate result of the negligence of CARNIVAL, Plaintiff was

injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation, cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment against CARNIVAL for damages recoverable under the general maritime law and applicable law, including economic damages (past and future); non-economic damages (past and future); court costs; interest under applicable law, including interest from the date of the subject incident under General Maritime Law; trial by jury on all issues so triable; and such other relief as the Court deems just.

**COUNT III – NEGLIGENT DESIGN, CONSTRUCTION, AND SELECTION OF MATERIALS**

Plaintiff realleges, adopts, and incorporates by reference the allegations in Paragraphs one (1) through twenty-two (22) as though alleged originally herein.

34. CARNIVAL owes a duty to exercise reasonable care for the safety of its passengers, which includes designing, constructing, and selecting materials for all areas of its vessels, including the subject area and subject deck surface, in a reasonably safe manner and in accordance with industry standards.

35. Upon information and belief, CARNIVAL has its ships, including the *Carnival Magic*, custom built to its own design and specifications. CARNIVAL participated in and/or approved the design of Deck 10 and the exterior floor surface and the selection of the teak and/or synthetic teak materials and finishes. At all times, CARNIVAL had ultimate control over the design and construction of the *Magic*, the right to inspect both the design and the construction at

the yard, and the right to approve or reject all materials. CARNIVAL approved the design, construction, materials, and finish of the Subject Floor and has continuously operated and maintained the Subject Vessel since its delivery in 2011.

36. CARNIVAL had actual and/or constructive notice of the dangerous condition, as alleged in Paragraphs 16 through 22 and incorporated herein.

37. The exterior portion of Deck 10 (the Lido Deck) is a space in which the presence of water and/or transitory substances on the floor is foreseeable and recurring due to water and/or transitory substances tracked in by passengers transitioning from pools and the pool deck, along with its exposure to outside elements. CARNIVAL knew or should have known that any flooring material installed in this space would be routinely exposed to water and transitory substances. Moreover, CARNIVAL knew or should have known that the teak/synthetic-teak walking surface near the pool on the exterior portion of the Lido Deck would foreseeably be exposed to water, moisture and/or soap, particularly during the morning hours following the overnight cleaning process, and would become unreasonably slippery when so exposed. CARNIVAL knew or should have known that the flooring material it chose and installed in the subject area was inadequately designed because it became unreasonably slippery when wet, creating an unreasonably dangerous slip hazard for passengers.

38. CARNIVAL designed the exterior portion of Deck 10 of the Vessel without adequate slip-resistant flooring materials, non-slip coatings, drainage systems, or other design features that would have prevented the deck surface from becoming dangerously slippery when wet.

39. Defendant breached its duty by approving, designing, constructing, and/or selecting:

a. Teak and/or synthetic teak walking surface for a common area of the vessel where CARNIVAL knew or should have known the surface would become unreasonably slippery when exposed to wet, liquid and/or foreseeable transitory substances;

b. Floor surface materials on the exterior portion of Deck 10 without adequate slip-resistant texture, coatings, abrasive strips, permanently installed anti-slip mats, inlays, or similar safeguards in the path where passengers were expected to visit;

c. Polishes, waxes, sealants, and/or finishes that, when applied to the teak/synthetic-teak flooring surface, exacerbated its slipperiness when wet; and/or

d. A layout, finish specification, and material selection that prioritized aesthetic appearance of the teak/synthetic-teak deck over passenger slip resistance on a pool deck.

40. CARNIVAL could have selected a different flooring material with an appropriate coefficient of friction under the circumstances including when wet, material designed for wet environments, non-slip coatings or sealants, rubberized or composite marine-grade flooring materials specifically engineered for use in wet areas aboard the Vessel, or recessed drainage systems designed to minimize standing water, but chose not to.

41. CARNIVAL's negligent design, construction, and selection of the exterior Deck 10 flooring material proximately caused Plaintiff's injuries. Had CARNIVAL properly designed, constructed, and selected structurally sound and slip-resistant flooring materials, and adequate drainage, the floor would not have become dangerously slippery when wet, and Plaintiff would never have slipped, fallen and been injured.

42. As a direct and proximate result of the negligence of CARNIVAL, Plaintiff was injured about Plaintiff's body and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiff's injuries, and suffered physical handicap. The injuries are permanent or continuing in nature, and Plaintiff will suffer the losses and impairments in the future. In addition, Plaintiff lost the benefit of Plaintiff's vacation,

cruise, and transportation costs.

WHEREFORE, Plaintiff demands judgment against CARNIVAL for damages recoverable under the general maritime law and applicable law, including economic damages (past and future); non-economic damages (past and future); court costs; interest under applicable law, including interest from the date of the subject incident under General Maritime Law; trial by jury on all issues so triable; and such other relief as the Court deems just.

Dated: September 28, 2026

Respectfully submitted,

By: /s/ *Brandon P. Volk*
Brandon P. Volk, Esq.
FBN: 1019012
brandon.volk@forthepeople.com
olivia.langston@forthepeople.com
Morgan & Morgan, P.A.
703 Waterford Way #1000,
Miami, FL 33126
Phone: (786) 582-3244
*Counsel for the Plaintiff*